[No. 14091. In Bank. — May 24, 1892.]

## LEO L. McCOY, Respondent, *v.* THE SOUTHERN PACIFIC COMPANY, Appellant.

Railroad Company — Liability for Loss of Sheep — Opening in Fence by Lessee of Land — Rights of Licensee. — A licensee who has acquired from the lessees of land the right to pasture his sheep thereon occupies no more favorable position to recover from a railroad company for the loss of sheep which strayed upon the track through an opening in the fence, made by the lessees for their own convenience, than that occupied by the lessees, who could not recover if the stock lost had been their own.

Id. — Agreement to Put up Gate — Duty of Railroad Company — Reasonable Time — Liability for Neglect. — If the lessees made the opening in the fence through which the sheep strayed, with the consent of the railroad company, and upon its agreement to replace the opening with a gate, it was the duty of the company to put up the gate within a reasonable time, and if it failed to do so, it would be liable for the loss of the stock occasioned by such neglect, precisely as if it had left the opening without the consent of the adjoining owner when it constructed the fence.

Id. — Evidence of Authority of Agent of Railroad Company. — In order to show that the railroad company agreed to put up a gate as claimed, it must be shown that the person assuming to act for it had authority, either actual or ostensible, to act for it in the matter, or that his agreement was subsequently ratified by the defendants.

Appeal from a judgment of the Superior Court of Tehama County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Chipman & Garter, N. P. Chipman,* and *S. C. Denson,* for Appellant.

*A. M. McCoy,* and *John F. Ellison,* for Respondent.

De Haven, J. — The complaint alleges that plaintiff's sheep were lawfully grazing in a certain field through which the road of defendant runs, and that by reason of the failure of defendant to construct and maintain a good and sufficient fence along the line of its road at that point, the sheep strayed upon defendant's road and were killed by the passing cars. This action is to recover damages for the loss of such sheep. The plaintiff recovered judgment in the superior court, and the defendant appeals.

The evidence upon the trial tended to show that the land from which the sheep strayed was at the time in the possession of Boyd Brothers, as lessees for a term of years, and that plaintiff's sheep were being pastured there, under an agreement with them, by which the plaintiff bought the stubble and feed standing in the field, with the privilege of herding or keeping his sheep on the stubble until it should be " fed off" by the sheep. In substance, the contract was for pasturage, the plaintiff undertaking to herd and look out for his sheep while they were on the land. The defendant constructed a sufficient fence along that portion of its road passing through the field in question, but prior to the time plaintiff obtained the right to thus pasture his sheep in the field, the Boyd Brothers, for their own convenience in driving in and out of the field, made and left an opening in the fence by removing a panel therefrom, and the fence was in this condition when plaintiff's sheep were put in the field, and the Boyd Brothers continued thereafter to drive through this open gap with their teams as they had done before, and it was through the breach thus made in the fence that plaintiff's sheep strayed upon the track of defendant.

Upon the trial, it was claimed by plaintiff that the Boyd Brothers took the panel out with the consent of defendant, and that defendant agreed to replace the same with a gate; while upon the other hand, the defendant insists that it gave no such consent, and made no such agreement.

1. Section 485 of the Civil Code provides: "Railroad corporations must make and maintain a good and sufficient fence on either or both sides of their track and property. In case they do not make and maintain such fence, if their engine or cars shall kill or maim any cattle or other domestic animals upon their line of road which passes through or along the property of the owner thereof, they must pay to the owner of such cattle or other domestic animals a fair market price for the same, unless it occurred through the neglect or fault of the owner of the animals so killed or maimed."

The defendant complied with this statutory duty so far as concerns the Boyd Brothers when it constructed the fence along the line of the road passing through the land occupied by them, and if thereafter they removed a panel from such fence for their own convenience, they would not be heard to complain if their own stock had strayed through the opening thus made onto the track of defendant, and been injured. In such a case, the loss would be attributed to their own fault, and the defendant would be exonerated from liability therefor by the very terms of the statute just quoted. We do not think that plaintiff occupies any more favorable position. The right which he had to pasture his sheep in the field from which they strayed was nothing more than a license, and this license did not confer upon him any rights as against the defendant which his licensors themselves did not possess. The question whether a subsequent grantee or lessee of this land could recover from defendant, if, by reason of its failure to repair this fence, the stock of such grantee or lessee should be injured by the cars of defendant, does not arise in this case.

The Boyd Brothers were at all times in the possession, occupation, and rightful control of the field from which plaintiff's sheep escaped, as lessees, and as such continued to use the opening which they had made in this fence, and they could not, by giving plaintiff permission to turn his sheep into such field, impose upon defendant

any new duty with respect to this fence, or expose it to liability for damages, such as here claimed, by one who is thus in privity with them. As the plaintiff here was there with his sheep only by their license, he must be deemed to stand in the place of the Boyds, and possessed only of such rights as they could have enforced against defendant, if they, instead of plaintiff, had owned the sheep killed on defendant's track.

2. The court did not err in refusing the instructions requested by defendant. The sixth instruction, as requested, was indefinite, and if given, would have laid down no rule for the jury to observe, and the third does not correctly state the law which would be applicable to the case if it were shown that the Boyd Brothers removed the panel with the consent of the defendant, and upon its agreement to replace it with a gate. In such a case, it would be the duty of the defendant to put up the gate within a reasonable time, and if it failed to do so, it would be liable for any loss of stock occasioned by such neglect, precisely as if it had left the opening without the consent of the adjoining owner when it constructed the fence.

As the case is to be remanded for a new trial, it is proper to say, that in order to prove that defendant agreed to put in a gate, it must be shown that the person assuming to act for it had authority, either actual or ostensible, to bind it in the matter, or that his agreement was subsequently ratified by defendant.

The third instruction given by the court, at the request of plaintiff, when read, as it must be, with reference to the evidence in the case, is in conflict with the law as declared in this opinion, and in giving it the court committed error.

The other points made do not require special mention. Judgment and order reversed.

Paterson, J., and Sharpstein, J., concurred.

McFarland, J., concurring.— I concur in the judgment of reversal, and in the opinion of Mr. Justice De

Haven, with this exception: I think that the sixth instruction asked by defendant should have been given. It told the jury, substantially, that plaintiff had no greater rights than the Boyds would have had if *their* sheep had escaped through the opening in the fence and been killed. Of course the jury should have been further instructed what, in the event supposed, the Boyds' rights would have been; but the instruction, as far as it went, was, in my opinion, correct.

Whether or not the statute was intended for the protection of the public generally, is a question which does not arise in this case. If a passenger were suing for damages from an accident caused by animals on the track, then such question would be presented. "Through or along the property of the owner thereof" certainly does not include a person who has a mere temporary license to have his stock eat stubble when his licensor maintains the opening. If so, then it would include the horses of a guest turned out for a day or two to graze. The Boyds were the owners of the property within the meaning of the statute. If the doctrine of the judgment of the lower court were to prevail, then a railroad company could never, with safety, give to any adjoining land-owner the accommodation that was given to the Boyds.

BEATTY, C. J., concurring. — I concur in the judgment, and in the opinion of Justice De Haven.

The superior court did not err in refusing to give the instructions asked by the defendant in the form in which they were put, for they did not state clearly or accurately the proposition of law upon which the defense rests, but certainly it was error to give the third instruction requested by plaintiff, unqualified by any statement of the proposition that the plaintiff, if a mere licensee of Boyd Brothers, could not recover for his loss if they made and maintained the opening in the fence for their own convenience.

The evidence in the case very clearly shows that the

defendant had fully performed its duty by the erection of a sufficient fence, and that Boyd Brothers subsequently removed a panel for their own convenience.  To counteract the effect of this proof, an attempt was made to show that defendant had agreed to close the gap by putting in a gate.  But in my opinion, there was no evidence to justify a finding that the defendant ever made any such agreement.  There was evidence that Daly, a section boss, promised to put in a gate, but no evidence that he had any authority to make such agreement in behalf of the defendant.  No actual authority was shown, nor any circumstance from which an actual authority can be inferred, and his ostensible authority to bind the defendant did not extend to a matter as to which the obligation rested exclusively upon Boyd Brothers, and in no degree upon the defendant.